# 23-7944-cv

## United States Court of Appeals
### *for the*
## Second Circuit

KEVIN T. MADDISON, individually and on behalf of
all other persons similarly situated,

*Plaintiff-Counter-Defendant-Appellant,*

DAVID WALTON, individually and on behalf of
all other persons similarly situated,

*Plaintiff-Appellant,*

– v. –

COMFORT SYSTEMS USA (SYRACUSE), INC.,
doing business as ABJ Fire Protection Co., Inc.,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-COUNTER-DEFENDANT-APPELLANT
## AND PLAINTIFF-APPELLANT

JASON J. ROZGER
MENKEN SIMPSON & ROZGER LLP
*Attorneys for Plaintiff-Counter-
Defendant-Appellant and
Plaintiff-Appellant*
80 Pine Street, 33rd Floor
New York, New York 10005
(212) 509-1616

CP COUNSEL PRESS    (800) 4-APPEAL • (328174)

## Table of Contents

Page

Table of Authorities ................................................................. iii

Jurisdictional Statement ............................................................ 1

Statement of Issues................................................................... 1

Statement of the Case................................................................ 2

Statement of Facts .................................................................... 5

Summary of Argument .............................................................. 6

Argument................................................................................. 9

    I.    Neither the Absence of Prevailing Wage Language in the Public Works Contracts, Nor Language Expressly Disclaiming Prevailing Wages, Justifies the Grant of Summary Judgment to Defendant on the Plaintiffs' Third-Party Beneficiary Prevailing Wage Claims ............................... 9

        Standard of Review ................................................... 9

        A.    New York Has A Strong Public Policy Favoring Enforcement of the Prevailing Wage Laws ..................... 9

        B.    Language Requiring Defendant to Pay Plaintiffs Prevailing Wages is Included In Each of Defendant's Public Works Contracts as a Matter of Law ................................................. 13

        C.    Language in a Public Works Contract That Is Contrary to NYLL § 220 Cannot Defeat an Otherwise Valid Prevailing Wage Claim Based on a Third-Party Beneficiary Theory ............................ 16

    II.    New York's Public Policy Strongly Favoring Private Enforcement of the Prevailing Wage Law Renders the Shortened One Year Statute of Limitations in the Defendant's Public Works Contracts Unenforceable ............................... 19

        Standard of Review ................................................... 19

III.    The New York Prevailing Wage Law Covers, and Has
Covered, Inspection and Testing of Fire Alarm and
Sprinkler Systems ......................................................................23

        Standard of Review ....................................................23

Conclusion ...............................................................................................27

# Table of Authorities

**Page(s)**

**Cases:**

*Agee v. Paramount Commc'ns, Inc.*,
  59 F.3d 317 (2d Cir. 1995) ................................................................23

*Austin v. City of New York*,
  179 N.E. 313 (N.Y. 1932).................................................................11

*Barnum v. Millbrook Care Ltd. P'ship*,
  850 F. Supp. 1227 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458
  (2d Cir. 1994)......................................................................... 21, 22

*Bridgestone/Firestone, Inc. v. Hartnett*,
  572 N.Y.S.2d 770 (3d Dep't 1991)............................................... 20, 24

*Bucci v. Village of Port Chester*,
  239 N.E.2d 335 (N.Y. 1968)................................................ 12, 20, 24

*Cayuga-Onondaga Ctys. Bd. of Co-op. Educ. Servs. v. Sweeney*,
  89 N.Y.2d 395, 676 N.E.2d 854 (1996)...............................................12

*City of Troy Unit of Rensselaer Cnty. Chapter of Civ. Serv. Emp. Ass'n v. City of Troy*,
  36 A.D.2d 145, 319 N.Y.S.2d 106 (1971), *aff'd sub nom. City of Troy Unit of Rensselaer Cnty. Chapter of Civ. Serv. Emps. Ass'n, Inc. v. City of Troy*,
  30 N.Y.2d 549, 281 N.E.2d 555 (1972)................................................15

*David Tunick, Inc. v. Kornfeld*,
  813 F. Supp. 988 (S.D.N.Y. 1993) ......................................................19

*Deegan v. City of Ithaca*,
  444 F.3d 135 (2d Cir. 2006) ..............................................................23

*Doey v. Clarence P. Howland Co., Inc.*,
  120 N.E.53, 224 N.Y. 30 (1918).........................................................14

*E. Williamson Roofing & Sheet Metal Co., v. Town of Parish*,
  139 A.D.2d 97, 530 N.Y.S.2d 720 (4th Dep't 1988)................................18

*Erie County Industrial Dev. Agency v. Roberts*,
  465 N.Y.S.2d 301 (N.Y. App. Div. 1983), *aff'd*, 472 N.E.2d 43 (N.Y. 1984) ...24

*Fata v. S. A. Healy Co.*,
  289 N.Y. 401, 46 N.E.2d 339 (1943)...................................... 13, 14, 18

*Guest v. Hansen*,
603 F.3d 15 (2d Cir. 2010) ........................................................... 9, 19, 23

*Hicks v. British Am.Assur. Co.*,
56 N.E. 743, 162 N.Y. 284 (1900).....................................................14

*Matter of Cayuga-Onondaga Counties Bd. of Co-op. Educational Services v. Sweeney*,
654 N.Y.2d 395 (N.Y. 1996) .................................................................10

*Mullins v. City of New York*,
653 F.3d 104 (2d Cir. 2011) ....................................................... 9, 19, 23

*Muschany v. U.S.*,
324 U.S. 49 (1945)........................................................................9, 10

*Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*,
484 U.S. 29 (1987)..............................................................................10

*People ex rel City of N.Y. v. Nixon*,
229 N.Y. 356, 128 N.E. 245 (1920)....................................................14

*People v. Scott*,
79 N.Y.2d 474, 593 N.E.2d 1328 (1992)...........................................12

*Ramos v. SimplexGrinnell L.P.*,
24 N.Y.2d 143, 21 N.E.3d 237 (2014)................................................15

*Ramos v. Simplex Grinnell L.P.*,
773 F.3d 394 (2014)............................................................................27

*Ramos v. SimplexGrinnell, L.P.*,
796 F. Supp. 2d 346 (E.D.N.Y. 2011) ................................................26

*Rodgers v. Coler*,
166 N.Y.1, 59 N.E. 716 (1901)...........................................................14

*Sidik v. Royal Sovereign International Inc.*,
348 F. Supp. 3d 206 (E.D.N.Y 2018) .................................................22

*Singh v. Zoria Hous., LLC*,
83 N.Y.S.3d 488, 163 A.D.3d 1025 (2d Dep't 2018)........................ 16-17, 19, 20

*Stamford Bd. Of Educ. v. Stamford Educ. Ass'n*,
697 F.2d 70 (2d Cir. 1982) .................................................................10

iv

*Tanges v. Heidelberg N. Am., Inc.,*
  93 N.Y.2d 48, 710 N.E.2d 250 (1999)....................................................21

*Tenalp Constr. Co. v. Roberts*,
  532 N.Y.S.2d 801 (2d Dep't 1989)........................................................25

*Thomas v. A.G. Elec., Inc.,*
  304 S.W.3d 179 (Mo. App. E. Dist. 2009) ............................................20

*Twin State CCS Corp. v. Roberts,*
  72 N.Y.2d 897, 528 N.E.2d 1219, 532 N.Y.S.2d 746 (1988) ..............18

*Varsity Transit v. Saporita*,
  98 Misc. 2d 255, *aff'd,* 48 N.Y.2d 910 (1979)....................................25

*Wright v. Herb Wright Stucco, Inc.,*
  50 N.Y.2d 837 (1980) (*adopting dissent below,* 422 N.Y.S.2d 253) ............ 13, 14

*Wroble v. Shaw Env't & Infrastructure Eng'g of New York, P.C.,*
  166 A.D.3d 520, 88 N.Y.S.3d 21 (1st Dep't 2018) ................................ 16, 17, 19

**Statutes and Other Authorities:**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

29 U.S.C. § 216 .........................................................................................1

N.Y. Const., art. I, § 17 ...........................................................................10

19 NYCRR § 195.1(d) ..............................................................................25

Labor Law § 220 ............................................................................... *passim*

Labor Law § 220(2) ..................................................................................15

Labor Law § 220(3)(a)...................................................................... *passim*

Labor Law § 220(3-a)(a)(ii)......................................................................11

Labor Law § 220(3)(b)................................................................................7

Labor Law § 230 .......................................................................................11

2007 New York Assembly Bill 9052, Sponsors Memorandum ................11

2021 New York Senate Bill No. 255, Committee Report, February 10, 2021........11

## Jurisdictional Statement

The district court had federal question jurisdiction under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, and supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. This Court has jurisdiction under 28 U.S.C. § 1291. On November 30, 2023, plaintiffs timely filed a notice of appeal (Appendix ("A") 1) from the November 3, 2023 judgment of the district court disposing of all the parties' claims (A-355) on all appealable matters, including the February 27, 2020 Memorandum & Order granting summary judgment to defendant with respect to plaintiffs' prevailing wage claims. (SPA-8-19).

## Statement of Issues

1. Does the New York Prevailing Wage Law (NYLL § 220) and New York public policy allow an employer to avoid liability for unpaid prevailing wages on a third-party beneficiary to contract theory by omitting the contract language recognizing the requirement to pay prevailing wages, as required by NYLL § 220(3)(a), and/or by including language in the underlying public works agreements denying the obligation to pay prevailing wages?

2. Does the NYLL and New York public policy allow an employer to avoid liability for unpaid prevailing wages on a third-party beneficiary to

1

contract theory by shortening the statute of limitations in the underlying public contracts?

3.  Are plaintiffs entitled to prevailing wages pursuant to the NYLL for fire alarm testing and inspection work on public works in the State of New York?

## Statement of the Case

This was a case brought by two former employees of Defendant for prevailing wages as required by the NYLL and for overtime pay under the FLSA (A-48).  Plaintiffs appeal from the February 27, 2020 decision (SPA-1) of District Judge Lawrence E. Kahn that granted Defendant's motion (A-120) for partial summary judgment on Plaintiffs' claims for prevailing wages[1].

This case has a fairly complex history; relevant to this appeal is that Plaintiff Kevin Maddison commenced this proposed class action against Comfort Systems on March 30, 2017 (A-1), filed an Amended Complaint on June 30, 2017 (A-4), a Second Amended Complaint on April 9, 2018 which added Plaintiff David Walton (A-48), and a Third Amended Complaint on February 5, 2020 (A-283).  Plaintiffs

---

[1] The district court dismissed Plaintiffs' causes of action brought under the FLSA, as third-party beneficiaries to Defendant's public works contracts under New York law, and for claims of *quantum meruit* and unjust enrichment, but underlying all those causes of action was the Plaintiffs' entitlement to prevailing wages under New York law.

allege that Defendant violated the NYLL's prevailing wage provisions, on a third-party beneficiary to contract theory, by willfully failing to pay Plaintiffs and similarly situated individuals who performed work on fire alarms, fire sprinklers, and security system equipment prevailing wages for work performed on public projects in the State of New York. (A-288-290, 294). Plaintiffs also brought claims that Defendant violated the FLSA by failing to pay overtime on public projects at the required prevailing wage rate (A-286, 293-294) and that Defendants violated the New York Labor Law by failing to credit intra-day travel time towards overtime (A-209-292, 294-295).

In lieu of responding to the Second Amended Complaint, Defendant moved to dismiss the travel time claims as inadequately pleaded (A-10, docket # 56). The motion was granted with leave to re-plead (A-16, docket # 93) which was done by the filing of the Third Amended Complaint on February 5, 2020 (A-283) to which Defendant filed another motion to dismiss (A-18, docket # 103). While the above motion was pending, Plaintiffs moved to conditionally certify the case as a collective action, pursuant to the FLSA. (A-14, docket # 80). Defendant cross-moved for partial summary judgment on May 21, 2019 on the Plaintiffs' prevailing wage-related causes of action (A-15, docket # 87).

On February 27, 2020, the court denied Plaintiffs' motion for conditional certification[2], and granted Defendant's motion for summary judgment on Plaintiff's prevailing wage claims (SPA-1). In doing so, the district court gave effect to several clauses in the Defendant's public work contracts that, in the district court's analysis, prevented Plaintiffs from bringing their prevailing wage claims. First, the district court gave effect to clauses in those contracts that shortened the statute of limitations for bringing suit to one year, reasoning that Plaintiffs, as third-party beneficiaries to those contracts, could have no greater rights in that respect than the parties to the contract, and rejecting Plaintiffs' argument that the strong public policy underlying the prevailing wage laws, in light of the lack of notice to the Plaintiffs of the shortened limitations period, rendered those clauses unenforceable as to Plaintiffs. (SPA-10-11).

Next, the district court held that the public contracts' lack of language providing for the payment of prevailing wages, despite NYLL § 220(3)(a)'s requirement that it be included in those contracts, prevented Plaintiffs from maintaining their third-party beneficiary claims. The court also gave effect to language, in some of the contracts, that affirmatively disclaimed any obligation to pay prevailing wages. (SPA -11-13). Finally, the court held that testing and

---

[2] That aspect of the district court's decision is not at issue on this appeal.

inspection work was not subject to prevailing wages under the NYLL, "even if the Court found that Defendant owed Plaintiffs prevailing wages under the Inspection Contracts," (SPA15-16). The court thereupon granted Defendant's motion for summary judgment on the Plaintiff's claims based on prevailing wages.

The remaining claims in the Third Amended Complaint, consisting of the NYLL claims for not crediting intra-day travel towards overtime pay, were settled on a class-wide basis, with a reservation of rights to appeal the district court's decision granting summary judgment on the prevailing wage claims (A-356, ¶ P, A-360, ¶ c). That class settlement was approved by the district court on November 3, 2023 (SPA-20) and Plaintiffs timely appealed on November 30, 2023 (A-376).

### Statement of Facts

Defendant is a full-service fire alarm and sprinkler company that offers fire alarm testing and inspection services, as well as repair services. (A-213). Plaintiffs were employed as Alarm Systems Technicians for Defendant. (A-213-214). Defendant entered into public works contracts for fire alarm testing and inspection with public customers such as Mount Markham Central School District (A-126), New York State Veterans Home (A-138), Tompkins Cortland Community College (A-151), Tri-Valley Central Schools (A-189) and Watertown Fire Department (A-197). The contracts contain clauses shortening the statute of limitations for an

5

action against Defendant under the contract to one year. (A-214, A-131, A-142, A-156, A-190, A-198). The contracts put forth by Defendant do not contain language memorializing Defendant's obligation to pay prevailing wages, as required by NYLL 220(3)(a). (A-124, A-214). In addition, some of the public contracts cited by Defendant affirmatively state that the work is not subject to prevailing wages (A-215, A-143, A-184).

Some of the Defenant's public fire alarm testing and inspection contracts did in fact provide for prevailing wages, such as for the Binghamton State Office Building (A-223-224) and the Guernsey Memorial Library (A-218, 220). Although the district court in a footnote to its summary judgment decision stated that its decision granting partial summary judgment was limited to claims based on the contracts Defendant cited (SPA-18), the court's decision enforcing the one year statute of limitations would bar claims under all of the contracts in the record, including those that expressly required prevailing wages (SPA-11, A-221, 224), since the Plaintiffs filed suit more than one year after leaving Defendant's employment (A-123).

## Summary of Argument

This Court should reverse the district court's decision granting summary judgment to Defendant on the Plaintiffs' causes of action based on prevailing

wages. That decision held that missing prevailing wage language in the public works contracts, as well as language affirmatively disclaiming the Defendant's prevailing wage obligation, was fatal to the Plaintiffs' third-party beneficiary claims. In so deciding, the district court ignored settled law that contract language requiring the payment of prevailing wages is required to be inserted in each public works contract, and if not actually inserted, is considered present by operation of law. Both NYLL § 220(3)(b) and the strong public policy underlying the prevailing wage obligation mean that contract language cannot prevent private enforcement of prevailing wages, even though the remedy is, formally, a third-party beneficiary cause of action.

Similarly, the parties to a public works contract cannot, without notice to the workers who benefit from such contracts, unilaterally shorten the statute of limitations applicable to such claims. The same public policy that underlies the prevailing wage laws, and the generous protections workers enjoy in enforcing the right to bring suit for those prevailing wages, renders contract language shortening the statute of limitations for such claims from six years to one unenforceable. In sum, parties to a public works contract cannot contract out of workers' rights to redress unpaid prevailing wages.

Finally, this Court should enter judgment for plaintiffs on the question of

whether fire alarm and sprinkler testing and inspection on public projects are covered by the New York prevailing wage law. The undisputed material facts, as applied to the New York prevailing wage law, mandate coverage. Comfort Systems' field electrical technicians and sprinkler fitters are "laborers, workmen, or mechanics" within the meaning of New York Labor Law § 220. Testing and inspection work is covered work, because it is indisputably part of maintenance under the New York prevailing wage law.

## Argument

### I. Neither the Absence of Prevailing Wage Language in the Public Works Contracts, Nor Language Expressly Disclaiming Prevailing Wages, Justifies the Grant of Summary Judgment to Defendant on the Plaintiffs' Third-Party Beneficiary Prevailing Wage Claims

**Standard of Review.**

The standard of review is *de novo*. *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011); *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).

The district court recognized that the Defendant did not contest that the Plaintiffs were within the ambit of the New York prevailing wage law (SPA-10). The court went on, however, to hold that the Plaintiffs were barred from recovering as third-party beneficiaries to the Defendant's public works contracts because the contract language either contained no mention of prevailing wages, or affirmatively denied that such wages were payable under those contracts. This was contrary to both ordinary precepts of contract law, as well as the public policy expressed in the prevailing wage laws.

### A. New York Has A Strong Public Policy Favoring Enforcement of the Prevailing Wage Laws

When a court finds enforcement of a contract would violate an important public policy, it can prevent such an outcome by voiding the offending provisions. *Muschany v. U.S.*, 324 U.S. 49 (1945) (recognizing "general doctrine, rooted in the

common law, that a court may refuse to enforce contracts that violate law or public policy")*; see Stamford Bd. Of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 73 (2d Cir. 1982). To reach this result, the threatened public policy must be a strong and established interest in the relevant jurisdiction. *Muschany* at 66.

When a jurisdiction has such dominant interest, it is reflected in the statutory scheme, court decisions, history, and governmental practice. *Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 44 (1987); *Muschany v. United States*, supra, 324 U.S., 49, 66 (1945).   In New York, these factors demonstrate a strong and lasting public policy interest in protecting workers and guaranteeing a prevailing wage for public works. In 1894, New York became just the second state to codify these protections. *Matter of Cayuga-Onondaga Counties Bd. of Co-op. Educational Services v Sweeney*, 654 N.Y.2d 395, 401 (N.Y. 1996) (summarizing state's history). When a 1901 court decision invalidated part of the statute, legislators responded by amending the State Constitution to allow for a prevailing wage law. *Id.* Eventually, in 1938, the right of workers on public projects to receive prevailing wages was again enshrined in the State Constitution. N.Y. Const. art. I, § 17.

Throughout history and up to the present day, the prevailing wage laws have been expended and updated in service of the constitutional guarantee and the

public policy which underlies it. NYLL § 230, *et.seq.,* which extends prevailing wage protections to building service workers, was enacted in 1971. In 2007, NYLL § 220 was amended to require employers to notify workers of their right to prevailing wages, *see* NYLL §220(3-a)(a)(ii); an accompanying memorandum stated legislators were responding to "testimony regarding the continuing statewide abuse and flagrant violation of the prevailing wage law" and sought to limit the ability of "unscrupulous contractors" to violate the law by taking advantage of workers who did not know of their rights or were not proficient in English. 2007 New York Assembly Bill 9052, Sponsors Memorandum. In 2021, the State Legislature updated and clarified a category of laborer deemed to be covered by §220, stating in the accompanying Committee Report, "the New York State Constitution makes clear that it is the public policy of New York to pay the prevailing wage to those working on publicly financed construction projects." 2021 New York Senate Bill No. 255, Committee Report, February 10, 2021.

Courts, relying in part on this history, have agreed that the purpose of N.Y. Labor Law §220 is to protect the worker from unfair treatment and guarantee a prevailing wage, and in keeping with principles of statutory interpretation, it should be liberally interpreted to further this goal. *Austin v. City of New York*, 179 N.E. 313 (N.Y. 1932) (statute is "an attempt by the state to hold its territorial

11

subdivisions to a standard of social justice in their deals with laborers, workmen, and mechanics" and "it is to be interpreted with the degree of liberality essential to the attainment of the end in view"); *Bucci v. Village of Port Chester*, 239 N.E.2d 335 (N.Y. 1968) (the statute "has as its entire aim the protection of workingmen against being induced, or obliged, to accept wages below the prevailing rate" and is "designed for the relief of the unprotected workmen.").

Of course, that the prevailing wage right is enshrined in the New York constitution is an especially strong expression of the public policy underlying it. *See Cayuga-Onondaga Ctys. Bd. of Co-op. Educ. Servs. v. Sweeney,* 89 N.Y.2d 395, 401, 676 N.E.2d 854 (1996) (quoting constitutional convention delegate arguing prevailing wage requirement "should assume constitutional proportions so that this policy of state may be manifest to labor and industry as a principle of state"); *People v. Scott*, 79 N.Y.2d 474, 496, 593 N.E.2d 1328 (1992) ("a State constitutional provision's presence in the document alone signifies its special meaning to the People of New York"). This is the context from which the numerous cases, cited herein, protecting a worker's ability to privately enforce the prevailing wage law arises.

B.     Language Requiring Defendant to Pay Plaintiffs Prevailing Wages is Included In Each of Defendant's Public Works Contracts as a Matter of Law

New York Labor Law § 220(3)(a) provides that public works contracts "shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or any other person about or upon such public work, shall be paid the wages herein provided." Thus, the requirement to pay prevailing wages is included in each public works contract as a matter of law, as held by the New York Court of Appeals. *Fata v. S. A. Healy Co.*, 289 N.Y. 401, 405, 46 N.E.2d 339 (1943) ("It cannot be doubted that provisions requiring the contractor to pay such wages are also inserted in the contract, whether voluntarily or under compulsion of the statute, for the benefit of the laborers as well as for the benefit of the public body which is a party to the contract"); *see also Wright v. Herb Wright Stucco, Inc.,* 50 N.Y.2d 837 (1980) (*adopting dissent below,* 422 N.Y.S.2d 253, 254) ("Section 220 of the Labor Law has as its entire aim the protection of workingmen against being induced, or obliged, to accept wages below the prevailing rate and must be construed with the liberality needed to carry out its beneficent purposes") (internal quotations omitted)[3].

---

[3] In deciding that the lack of prevailing wage contract language disposed of Plaintiffs' prevailing wage claims, the district court held that "*Fata* suggested that a laborer in this situation is limited to his statutory remedies." (SPA-13). Even if *Fata* did so suggest, the claim that common-law remedies to enforce prevailing

In *Fata,* the court reiterated its prior holding in *Rodgers v. Coler*, 166 N.Y.1, 59 N.E. 716 (1901), that Labor Law 220 "governs the contract and the rights of the parties, whether actually incorporated into the writing or not, since all contracts are assumed to be made with a view to existing laws on the subject.") *Fata*, 289 N.Y. at 406.  This holding is fully consistent with the court's decisions in other contexts concerning statutes that govern contractual relationships.  Where a statute requires contracts to contain certain provisions, those provisions are incorporated into those contracts as a matter of law, whether actually included or not.  *See, e.g., Doey v. Clarence P. Howland Co., Inc.,* 120 N.E.53, 224 N.Y. 30 (1918) ("the statute [the Worker's Compensation Law] giving the commission power to make an award is read into and becomes part of the contract...the contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee is injured, will pay to him a certain sum"); *Hicks v. British Am.Assur. Co.,* 56 N.E. 743, 162 N.Y. 284 (1900) (in fire insurance context, "the law reads into the contract the standard policy, whether it be referred to in terms or not"); *People ex rel City of N.Y. v. Nixon*, 229 N.Y. 356, 361, 128 N.E. 245, 247 (1920) (Cardozo, J.)

---

wage obligations were as in any way limited by the existence of administrative remedies was firmly put to rest by *Wright,* which held "it is incongruous to hold…that this ameliorative statute actually had the effect of removing a remedy which workers had heretofore possessed."  *Id.*

("Statutes then existing are read into the contract. They enter by implication into its terms. They do not change the obligation. They make it what it is"); *City of Troy Unit of Rensselaer Cnty. Chapter of Civ. Serv. Emp. Ass'n v. City of Troy*, 36 A.D.2d 145, 147, 319 N.Y.S.2d 106, 108 (1971), *aff'd sub nom. City of Troy Unit of Rensselaer Cnty. Chapter of Civ. Serv. Emps. Ass'n, Inc. v. City of Troy*, 30 N.Y.2d 549, 281 N.E.2d 555 (1972) ("Whether the ordinance is incorporated into the contract by reference or not is immaterial. Contract obligations are determined by the law in force when the contract is made.")

Therefore, if a law requires a contract contain certain language, that language is in the contract whether the parties wish to include it or not, and whether the parties to the contract correctly understand their legal obligations or not. This was made abundantly clear by the Court of Appeals in *Ramos v. SimplexGrinnell L.P.,* 24 N.Y.2d 143, 148, 21 N.E.3d 237 239 (2014), a third-party beneficiary prevailing wage case like this one:

> An agreement to comply with a statute is an agreement to comply with it as correctly interpreted, whether or not the correct interpretation was known to the parties at the time of contracting. This is particularly clear where, as here, a contractual clause agreeing to comply is required by the statute itself (*see* Labor Law § 220[2]). The legislature surely meant that the parties must agree to comply with the law as correctly understood, not as the parties may have misunderstood it.

The New York courts can hardly be clearer – every public work contract carries with it an obligation to pay prevailing wages that is enforceable through a third-party beneficiary claim, regardless of the subjective intent of the contracting parties. Contrary to the district court's holding, if the required prevailing wage language is missing from the contract, an employer is not immunized from a prevailing wage claim brought by an employee in a private action. The prevailing wage obligation is incurred by the Labor Law, not by the required contract language itself.

C. Language in a Public Works Contract That Is Contrary to NYLL § 220 Cannot Defeat an Otherwise Valid Prevailing Wage Claim Based on a Third-Party Beneficiary Theory

Since as a matter of law, each public works contract under which Defendant performed public work requires the payment of prevailing wages, the district court erred when it held that Plaintiffs could not recover as third-party beneficiaries to the Defendant's public work contracts because those contracts did not affirmatively state that prevailing wages were required, or affirmatively denied that prevailing wages were required. (SPA-13). In doing so, the District Court brushed aside the New York appellate decisions in *Wroble v. Shaw Env't & Infrastructure Eng'g of New York, P.C.,* 166 A.D.3d 520, 521, 88 N.Y.S.3d 21, 23 (1st Dept. 2018) and *Singh v. Zoria Hous., LLC*, 83 N.Y.S.3d 488, 490, 163 A.D.3d 1025 (2d

16

Dept. 2018) because "neither case holds that contracts forbidding payments of prevailing wages are void as against public policy." (SPA-13).

On a superficial level the district court was correct: *Wroble* held that a provision in a public works contract that forbade a third-party beneficiary claim was void as a matter of public policy due to Labor Law § 220, and *Singh* held that employees were not bound by a contractual provision requiring the exhaustion of administrative remedies before proceeding on their third-party beneficiary breach of contract claim. But in attempting to distinguish these cases, the district court ignored the fundamental principle underlying both decisions: that New York courts will not enforce provisions in a public works contract that interfere with a worker's right to enforce their prevailing wage rights through a third-party beneficiary action. And just as an employer cannot insulate itself from its obligation to pay prevailing wages by disclaiming a such a claim in the contract, or requiring the exhaustion of administrative remedies, nor can an employer insulate itself from that obligation by leaving out the prevailing wage language required by § 220(3)(a). To permit such an expedient would allow each employer to rid itself of private prevailing wage enforcement by fiat. Given the strong and longstanding public policy favoring the ability to enforce prevailing wage claims, such an argument is in clear contravention of New York public policy.

17

In other words, it is impossible for a contractor to refuse, or not agree, to pay prevailing wages on a public job - § 220(3)(a) <u>requires</u> the contractor to so agree. Defendant would have the Court believe that omitting the prevailing wage language from a public contract relieves it from the obligation of paying such prevailing wages, at least when faced with a third-party beneficiary lawsuit. Were this true, the prevailing wage law would quickly become a nullity - for this reason, the Court of Appeals and lower New York courts have universally held that omission of the prevailing wage language in the contract does not extinguish the requirement to pay prevailing wages. *See Fata,* 289 N.Y. at 406; *Twin State CCS Corp. v. Roberts,* 72 N.Y.2d 897, 528 N.E.2d 1219, 532 N.Y.S.2d 746 (1988) ("the failure to annex the PRS [prevailing rate schedule] to the work specifications did not relieve petitioner of its obligation to pay prevailing wages"); *see also E. Williamson Roofing & Sheet Metal Co., v. Town of Parish*, 139 A.D.2d 97, 101, 105, 530 N.Y.S.2d 720 (4th Dept. 1988) ("an experienced public work contractor likewise knew or should have known of the prevailing wage requirement and is chargeable with such knowledge...the Legislature has continually increased the liability of contractors to provide the prevailing wage and supplements as well as the right of employees to enforce their rights against contractors").

Accordingly, this Court should reverse, and rule that Plaintiffs may  recover

under a third-party beneficiary theory because the prevailing wage language

required by NYLL § 220(3)(a) is deemed present in the applicable public works

contracts as a matter of law.

**II.    New York's Public Policy Strongly Favoring Private Enforcement of the Prevailing Wage Law Renders the Shortened One Year Statute of Limitations in the Defendant's Public Works Contracts Unenforceable**

**Standard of Review.**

The standard of review is *de novo.  Mullins v. City of New York*, 653 F.3d

104, 113 (2d Cir. 2011); *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).

"As a matter of public policy, contractual provisions that purport to shorten

otherwise applicable limitations periods will be enforced only if reasonable."

*David Tunick, Inc. v. Kornfeld*, 813 F. Supp. 988, 993 (S.D.N.Y. 1993).  As shown

above, New York courts do not hesitate to strike provisions in public works

contracts that unduly interfere with the ability of workers to bring private rights of

action to enforce their prevailing wage rights.  *See Wrobel* and *Singh, supra*.  The

fact that those rights of action take the form of a third-party beneficiary to contract

claim is not a constraint on workers' rights to enforcement; the requirements of

§220(3)(a) ensure that workers can maintain such actions.

However, the entire purpose of §220(3)(a), and the public policy that

underlies the entire edifice of worker-protective prevailing wage law decisions,

would be undermined if contracting parties were permitted, without notice to the employees, to reduce the statute of limitations applicable to those claims by a factor of six. Laborers, workers or mechanics do not negotiate prevailing wage contracts; there is no indication in the record that Plaintiffs had any role in negotiating the public works contracts they worked under; nor is there any evidence they were informed of the terms of those contracts. To permit contracting parties to secretly eliminate entire swaths of prevailing wage claims in this way is manifestly unfair to the workers, and contrary to the repeated admonitions of the New York appellate courts to interpret the prevailing wage law consistent with its beneficent purposes. *See Hartnett, supra; Bucci, supra*.

Under these circumstances, there can be little doubt that enforcing a contractually shortened limitations period for prevailing wage third-party beneficiary actions violates New York's public policy. Just as an employer cannot contrive to limit these claims by contract language disclaiming third-party claims (*Wrobel*) or by requiring exhaustion of administrative remedies (*Singh*), so would New York courts not enforce a contractual statute of limitations, unknown to the workers, that would quickly extinguish their prevailing wage rights. *See Thomas v. A.G. Elec., Inc.,* 304 S.W.3d 179, 188 (Mo. App. E. Dist. 2009) (expressing doubt that in a prevailing wage case contract parties are "free to avoid liability by

constructing a notice period shorter than the express three-year statute of

limitations established by the General Assembly.")

The district court held the shortened limitations period acceptable, citing

*Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1234 (S.D.N.Y. 1994),

*aff'd*, 43 F.3d 1458 (2d Cir. 1994) for the proposition that "a third-party

beneficiary does not have greater rights than the promisee under the agreement

sued upon." (SGA-10). *Barnum* was not a prevailing wage case, and did not

implicate any similarly weighty public policy. It tells us nothing about the rights

New York workers have to bring prevailing wage claims.

Moreover, Plaintiffs are not asking for more substantive rights under the

contract than the direct parties; they are not seeking to expand the scope of work to

be done or to adjust the contract price. For Plaintiffs to not be subject to an

undisclosed shortened limitations period does not offend the substantive rights of

the direct parties to the public works contracts; a limitations period is a procedural

right, not a substantive one. *Tanges v. Heidelberg N. Am., Inc.,* 93 N.Y.2d 48, 54–

55, 710 N.E.2d 250, 253 (1999) ("In New York, Statutes of Limitation are

generally considered procedural because they are viewed as pertaining to the

remedy rather than the right.") Thus, if Plaintiffs as third-party beneficiaries enjoy

a longer statute of limitations than the direct parties to the contract, they are not

enjoying more substantive rights than those parties; they are merely being allowed to take full advantage of the remedy available to workers by the State to enforce their prevailing wage rights.

Finally, the cases the district court cited to the contrary are otherwise inapposite. In *Barnum,* in addition to not implicating the strong public policy of a prevailing wage case, the putative third-party beneficiary had actual notice of the shortened limitations period. *Barnum,* at 1230 ("the terms of the Agreement were set forth to the residents in the Second Amendment… [o]n November 29, 1990, Barnum executed the Consent Form which stated she agreed to the contents of the Second Amendment and the attached Note."). *Sidik v. Royal Sovereign International Inc.*, 348 F. Supp. 3d 206 (E.D.N.Y 2018), concerned claims brought under a home alarm system contract by the spouse and children of the contracting party as a third-party beneficiary. The court determined it was appropriate to enforce the shortened statutes of limitation, of which the third party's family member had been informed of and signed.

Thus, *Barnum* and *Sidik* were decided based on their specific facts. None of the third parties in these cases are as attenuated from the initial contract as the instant Plaintiffs; indeed, in the only cases relied on by the district court, the putative third-party beneficiaries fall were all in categories that put them in close

22

proximity to, gave them notice of, or gave them reason to know the terms of the initial contract. Neither case supports overcoming the public policy at issue in this case.

Accordingly, the district court committed an error of law in granting summary judgment to Defendant because of a one-year statute of limitations in the public works contracts at issue.

### III. The New York Prevailing Wage Law Covers, and Has Covered, Inspection and Testing of Fire Alarm and Sprinkler Systems.

**Standard of Review.**

The standard of review is *de novo. Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011); *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The Court in its review may reverse the grant of summary judgment to Defendant and direct the entry of judgment in favor of Plaintiffs, with a remand for appropriate relief. *See, e.g.*, *Deegan v. City of Ithaca*, 444 F.3d 135, 146-47 (2d Cir. 2006); *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 327 (2d Cir. 1995).

Judgment should be entered in favor of Plaintiffs on the question of whether testing and inspection is covered under the New York prevailing wage law as part of maintenance. Such work is, and at all relevant times has been, covered under the New York prevailing wage law.

There are two overarching guidelines to the coverage analysis under the New York prevailing wage law, first, the recognized remedial purpose of the law, and second, the well-established right of workers to enforce the provisions of § 220 in third party beneficiary actions in the courts. New York courts have consistently held that the prevailing wage law is remedial legislation to be construed liberally in favor of the workers whom it is designed to protect. "The Labor Law's prevailing wage requirement reflects a strong public policy in this State and the statute is to be liberally construed to effectuate its beneficent purposes." *Bridgestone/Firestone, Inc. v. Hartnett*, 572 N.Y.S.2d 770, 772 (3d Dept. 1991) (citation omitted). *See also Bucci,* 292 N.Y.S.2d at 397 ("section 220 must be construed with the liberality needed to carry out its beneficent purposes").

There is a traditional two-part analysis for prevailing wage coverage in New York. The first part is to determine whether those persons conducting the work are "laborers, workmen, or mechanics" within the meaning of NYLL § 220. *Erie County Industrial Dev. Agency v. Roberts*, 465 N.Y.S.2d 301, 305 (N.Y. App. Div. 1983), *aff'd*, 472 N.E.2d 43 (N.Y. 1984). Defendant does not dispute that Plaintiffs, who perform testing and inspection on fire systems, are laborers, workmen, or mechanics. (SPA-10).

The second part of the analysis is a determination of whether the work is covered work. Maintenance, while not stated expressly in the text of the NYLL, has long been considered to be covered work under Section 220. *See Tenalp Constr. Co. v. Roberts*, 532 N.Y.S.2d 801, 804 (2d Dep't 1989) (quoting *Varsity Transit v. Saporita*, 98 Misc. 2d 255, 259, 260, *aff'd*, 48 N.Y.2d 910 (1979)) (public work includes "construction, replacement, maintenance, and repair of public works").

In addition, New York State, in licensing fire alarm technicians, recognizes that testing and inspection is an integral part of fire alarm system maintenance, 19 N.Y. Comp. Codes R. & Regs. § 195.1(d) (2013):

> Maintaining an alarm system includes, but is not limited to, the inspection of a device, component or system for the purposes of detecting and preventing problems with equipment and devices, such as, control panels, batteries, smoke or heat detectors, motion detectors, switches, annunciators, sensors, sirens, horns, bells, microprocessors (control, logic key pads), other communication equipment and similar devices. Maintenance shall also include testing of alarm components, devices or systems for the purpose of establishing proper operating conditions. Maintaining an alarm system also includes inspection, testing, programming or reprogramming of the client's control panel to include but not be limited to testing, programming or reprogramming for access codes, system protocol, bypass features, and hours of operation.

Consistent with this background, both the Department of Labor and the only court to expressly consider the question have held that fire alarm and sprinkler

testing and inspection is prevailing wage work. On December 31, 2009, the New York State Department of Labor (DOL) issued an opinion letter stating that testing and inspection falls within the coverage of the New York prevailing wage law, for work done under contracts put out for bid after January 1, 2010. The court in *Ramos v. SimplexGrinnell, L.P.* 796 F.Supp.2d 346, 367 (E.D.N.Y. 2011) gave effect to this opinion letter. Despite the fact that the opinion letter held, at least prospectively, that fire alarm testing and inspection was prevailing wage work, the opinion letter resulted in summary judgment being entered against the workers because the testing and inspection work at issue was on contracts bid before that date. *Id.*

Subsequently, the DOL modified its position, clarifying on appeal in the *Ramos* case that it was not seeking judicial deference, as applied to private actions, for its decision to enforce prevailing wages for testing and inspection work only for contracts bid after January 1, 2010, and the Second Circuit thus permitted the *Ramos* plaintiffs to pursue their prevailing wage testing and inspection claims for all relevant times:

> Thus, it is clear that the testing and inspection work done by Plaintiffs fell under the scope of NYLL section 220. And even though this was not clear at the time that the parties entered into the public works contracts at issue here, the Court of Appeals has now made clear that the contracts nevertheless required compliance with NYLL

26

> section as correctly interpreted, meaning that prevailing
> wages were required to be paid for the testing and
> inspection work.

*Ramos v. Simplex Grinnell L.P.,* 773 F.3d 394 (2014). There can be no doubt that controlling caselaw requires prevailing wages be paid for fire alarm testing and inspection work done on public projects.

In brushing aside the clear mandate of this Court and the DOL that testing and inspection is prevailing wage work, the district court gave effect to the Defendants' representation in the contracts that testing and inspection was not a part of fire alarm maintenance. (SPA-16). But whether fire alarm testing and inspection is a part of maintenance, and thus entitled to prevailing wages, is an objective question that has already been answered in the affirmative; what determines coverage under the statute is determined by what the work is, not by a contract disclaimer. Accordingly, this Court should reverse the district court's grant of summary judgment on the Plaintiff's testing and inspection claims, and hold that such work is subject to the NYLL's prevailing wage requirement.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court to reverse the grant of summary judgment to Defendant.

*Attorneys for Appellants-Plaintiffs*

Respectfully submitted,

Dated: March 14, 2024      By: _____/s/_____
                         Jason Rozger

                       MENKEN SIMPSON & ROZGER LLP
                       80 Pine Street, 33rd Floor
                       New York, New York 10005
                       Tel. (212) 509-1616
                       Fax (212) 509-8088
                       jrozger@nyemployeelaw.com

## <u>CERTIFICATE PURSUANT TO F.R.A.P. 32(a)(7)(C)</u>

I, Jason J. Rozger, do certify the within brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), in that the brief contains 5,983 words.

_____/s/_____

Jason Rozger

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

                                                         **Page**

Memorandum-Decision and Order of the Honorable
Lawrence E. Kahn, dated February 27, 2020,
Appealed From ....................................................... SPA-1

Order Granting Final Approval of Class Action
Settlement of the Honorable Lawrence E. Kahn,
dated November 3, 2023, Appealed From ............. SPA-20

SPA-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEVIN T. MADDISON and DAVID
WALTON,
individually and on behalf of
all other persons similarly situated,

                              Plaintiffs,

         -against-                                          5:17-CV-0359 (LEK/ATB)

COMFORT SYSTEMS USA (SYRACUSE),
INC., d/b/a ABJ FIRE PROTECTION CO.,
INC.,

                              Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

Plaintiffs Kevin T. Maddison and David Walton have moved for conditional certification

of a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201, *et seq.* Dkt. Nos. 80 ("Motion for Conditional Certification"); 80-1 ("Plaintiffs'

Memorandum"); 80-2 ("Rozger Declaration"). Comfort Systems USA (Syracuse), Inc.

("Defendant") has opposed conditional certification and moved for summary judgment on

several of Plaintiffs' claims. Dkt Nos. 87 ("Motion for Partial Summary Judgment" and

"Opposition to Motion for Conditional Certification"); 87-1 ("Rizzo Declaration"); 87-3

("Pizzutelli Declaration"); 87-6 ("Defendant's Statement of Material Facts"); 87-7 ("Defendant's

Memorandum").

For the reasons that follow, Plaintiff's Motion for Conditional Certification is denied and

Defendant's Motion for Partial Summary Judgment is granted.

SPA-2

## II.     BACKGROUND

### A.  Factual Background

The facts and allegations in this case were detailed in previous Memorandum-Decisions

and Orders of this Court, familiarity with which is assumed. See Dkt. Nos. 19 ("February 2018

Memorandum-Decision and Order"); 93 ("September 2019 Memorandum-Decision and Order").

### B.  Procedural History

This case has a long and somewhat convoluted procedural history, some of which is

relevant to determination of the pending motions, but all of which the Court provides for clarity's

sake.

Maddison commenced this action on March 30, 2017. Dkt. No. 1 ("Complaint"). On June

12, 2017, Defendant moved to dismiss the Complaint, or, in the alternative, to strike the

Complaint's class allegations. Dkt. No. 10 ("Motion to Dismiss the Complaint"). The Court had

not yet ruled on Defendant's Motion to Dismiss the Complaint when Maddison filed his First

Amended Complaint. Dkt. No. 14 ("First Amended Complaint"). On July 14, 2017, Defendant

then moved to dismiss the First Amended Complaint, or, in the alternative, to strike Maddison's

class allegations. Dkt. No. 15 ("Motion to Dismiss the First Amended Complaint"). On February

1, 2018, this Court denied Defendant's Motion to Dismiss First Amended Complaint, but granted

its motion to strike as to any of Maddison's class claims that allegedly arose before May 2011 or

after May 2015. February 2018 Memorandum-Decision and Order. On February 15, 2018,

Defendant answered the First Amended Complaint and counterclaimed against Maddison for

unjust enrichment under New York State law. Dkt. No. 21 ("Defendant Answer and

2

Counterclaim"). Maddison answered the Counterclaim on March 7, 2018. Dkt. No. 25

("Counterclaim-Defendant Answer").

On April 9, 2018, Maddison moved to amend his First Amended Complaint and to add

Walton as an additional class representative. Dkt. No. 29 ("Motion to Amend and Intervene").

On August 24, 2018, Magistrate Judge Baxter denied Maddison's Motion to Amend and

Intervene in that:

> (1) plaintiff may not pursue the proposed Third Cause of Action
> under the [NYLL] for overtime based on prevailing wages on public
> works projects, as that claim is futile because plaintiff did not first
> pursue the appropriate administrative remedies under NYLL § 220;
> (2) to the extent the Third Cause of Action claims overtime involving
> uncounted travel time, any claims by an employee during work weeks
> when he is claiming any overtime based on the prevailing wage on a
> public work project would also be futile and may not be pursued for
> failure to exhaust administrative remedies under NYLL § 220; (3)
> plaintiff David Walton may not pursue his proposed claim under the
> Fair Labor Standards Act ("FLSA"), as it is barred by the applicable
> statute of limitations and is futile.

Dkt. No. 46 ("August 24, 2018 Text Order"). The Magistrate Judge granted Maddison's Motion

to Amend and Intervene in all other respects. Id.

Plaintiffs filed their Second Amended Complaint on the same day Magistrate Judge

Baxter issued the August 24, 2018 Text Order, Dkt. No. 48 ("Second Amended Complaint"), and

objected to the text order on September 7, 2018, Dkt. No. 53 ("Plaintiffs' Objection"). Defendant

filed a motion to dismiss Plaintiffs' Second Amended Complaint and a response to Plaintiffs'

Objection on September 28, 2019. Dkt. No. 56 ("Motion to Dismiss the Second Amended

Complaint"). On September 30, 2019, this Court granted Defendant's Motion to Dismiss the

Second Amended Complaint and denied Plaintiffs' Objection. September 2019 Memorandum-

Decision and Order. On November 27, 2019, Plaintiffs moved to amend their Second Amended Complaint. Dkt. No. 95 ("Motion to Amend the Second Amended Complaint"). On January 20, 2020, Magistrate Judge Baxter granted Plaintiffs' Motion to Amend Second Amended Complaint. Dkt. No. 99 ("January 2020 Text Order"). Plaintiffs filed their Third Amended Complaint on February 10, 2020. Dkt. No. 101 ("Third Amended Complaint"). There is now a pending motion to dismiss Plaintiffs' Third Amended Complaint, Dkt. No. 103 ("Motion to Dismiss the Third Amended Complaint") but that motion is not yet ripe for determination since it has yet to be fully briefed.

While the parties disputed the sufficiency of Plaintiffs' Second Amended Complaint, they proceeded with discovery. On March 27, 2019, Plaintiffs moved under the FLSA to conditionally certify a class of similarly situated individuals "employed by Comfort Systems who performed work on fire alarms, fire sprinkler, and security system equipment in the State of New York, during the six years preceding March 30, 2011." Mot. for Conditional Certification at 12. On May 21, 2019, Defendant moved for partial summary judgment and opposed Plaintiffs' Motion for conditional Certification. Mot. for Partial Summ. J; Opp'n to Mot. for Conditional Certification. On June 4, 2019, Plaintiffs filed their response to Defendant's Motion for Partial Summary Judgment and Opposition to Motion for Conditional Certification. Dkt. No. 88 ("Plaintiffs' Response"). On June 10, 2019, Defendant replied to Plaintiffs' Response. Dkt. No. 92 ("Defendant's Reply").

4

SPA-5

## III.   LEGAL STANDARDS

### A.  Conditional Certification

"Section 216(b) of the FLSA provides for any employee to bring a collective action on behalf of himself or others 'similarly situated' as long as any employee willing to join such an action gives his consent in writing and that 'such consent is filed in the court in which such action is brought.'" Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 361–62 (E.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can move to conditionally certify a § 216(b) class by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (citing cases). "The modest showing required for conditional certification cannot be satisfied simply by unsupported assertions. Instead, the factual showing, even if modest, must still be based on some substance." Augustyniak v. Lowe's Home Ctr., LLC, 102 F. Supp. 3d 479, 485 n.5 (W.D.N.Y. 2015) (citations and quotation marks omitted). "Courts regularly grant motions for approval of a collective action [] 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.'" Sobczak, 540 F. Supp. 2d at 362 (quoting Wraga v. Marble Lite, Inc., No. 05-CV-5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006)).[1]

---

[1] Plaintiffs have moved to conditionally certify a collective action. Once the class is conditionally certified and notice is served to the other proposed plaintiffs, Plaintiffs may move to formally certify the class. Upon doing so, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated to the named plaintiffs. The action may be

SPA-6

**B. Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 256 (2d Cir. 2013) (noting summary judgment is appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

**IV.   DISCUSSION**

**A. Conditional Certification**

In their Motion for Conditional Certification, Plaintiffs request the Court (1) conditionally certify a collective action; (2) issue notice of said action; and (3) compel Defendant "to provide the names, addresses, telephone numbers, e-mail addresses, date of employment, dates of birth, and, if applicable, last four digits of the Social Security numbers" of other potential plaintiffs. Mot. for Conditional Certification at 13–14.

---

'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

6

Regarding Plaintiffs' request for certification, Plaintiffs have not submitted any affidavits or exhibits that contain a "reference to any [] employee other than Plaintiffs." See Morales v. Plantworks, Inc., No. 05-CV-2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006); see also Prizmic v. Armour, Inc., No. 05-CV-2503, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) ("Here, plaintiff has not submitted *any* evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law." (emphasis in original)). "On the contrary, [Plaintiffs] make[] only general allegations in [their] complaint that" they and other individuals who have performed various types of electrical or sprinkler work on behalf of Defendant "were denied overtime compensation." See id.; Flores v. Osaka Health SPA, Inc., No. 05-CV-962, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) ("The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action." (citing Morales, 2006 WL 278154, at *3)). Accordingly, Plaintiffs' Motion for Conditional Certification is denied.

The Court also denies Plaintiffs' requests that the Court issue notice of a conditionally certified collective action and compel Defendant to provide information on other similarly situated employees. See Becerra v. IM LLC-I, No. 14-CV-2671, 2015 WL 1954478, at *6 (E.D.N.Y. Apr. 29, 2015), aff'd, No. 14-CV-2671, 2016 WL 8968978 (E.D.N.Y. Feb. 20, 2016) ("Because the Court has denied Plaintiff's motion for conditional certification, his related request for court-facilitated notice is denied as moot. In addition, Plaintiff's application for the disclosure of the names, addresses, telephone numbers and dates of birth of prospective opt-in plaintiffs is denied.").

7

**B. Summary Judgment**

Defendants move for partial summary judgment on three of Plaintiffs' claims brought on

behalf of themselves and others[2]: (1) breach of contract for failing to pay wages at the prevailing

rate and supplemental benefits to Plaintiffs as third-party beneficiaries of contracts that

Defendant entered into with public entities; (2) violations of the FLSA for failing to pay overtime

at a rate of 1.5 times the prevailing wage rate; and (3) quantum meruit and unjust enrichment.

Mot. for Partial Summ. J. at 1; Third Am. Compl. ¶¶ 54–62, 67–74. Defendant has not moved for

summary judgment on Plaintiffs' claims that Defendant violated New York Labor Law

("NYLL") by failing (1) to pay Plaintiffs overtime at a rate of 1.5 times the prevailing wage rate;

and (2) to credit travel time towards the forty hours of work required before owing overtime.

Third Am. Compl. ¶¶ 63–66.[3]

*1. Breach of Contract and FLSA Claims*

Defendant seeks dismissal of Plaintiffs' third-party beneficiary and FLSA claims for

certain contracts Defendant entered into with public institutions. These eleven contracts are "Fire

Alarm System Inspection Agreements and Sprinkler Inspection Agreements for sites where

Maddison and Walton performed work." Rizzo Decl. ¶ 13, Ex. 1 (collectively, the "Inspection

---

[2] For simplicity, from here onward when the Court mentions "Plaintiffs" the Court refers to both the Plaintiffs themselves and the similarly situated individuals Plaintiffs purport to represent.

[3] The Court clarifies that Defendant technically moved for summary judgment on claims asserted in Plaintiffs' Second Amended Complaint since that complaint was the operative pleading at the time Defendant filed its Motion for Partial Summary Judgment. However, since Plaintiffs' Third Amended Complaint is now the operative pleading and contains nearly identical claims to those included in the previous amended complaint, the Court construes Defendant's Motion for Partial Summary Judgment as addressing claims in the latter amended complaint. Thus, the Motion for Partial Summary Judgment remains ripe for determination.

Contracts"). For the reasons described below, the Court grants Defendant's Motion for Partial

Summary Judgment on Plaintiffs' breach of contract and FLSA claims based on the Inspection

Contracts.

As the Second Circuit has observed:

> Under New York law, the requirement that workers engaged in
> "public works" should be paid at prevailing wages reaches back at
> least to 1905, when Article 1, Section 17 of the State's Constitution
> was passed. The amendment stated that no worker "engaged in the
> performance of any public work, shall be . . . paid less than the rate
> of wages prevailing in the same trade or occupation in the locality
> within the state where such public work is to be situated, erected or
> used." N.Y. Const. art. I. § 17.
>
> The portion of the NYLL at issue here—section 220—is, as the
> district court put it, a "codification" of that amendment. [Ramos v.
> SimplexGrinnell LP, 796 F. Supp. 2d 346, 352 (E.D.N.Y. 2011)].
> Section 220 . . . states that every public works contract must provide
> that all laborers employed by the contract will be paid prevailing
> wages. N.Y. Lab. Law 220(3)(a). It also furnishes administrative
> mechanisms to enforce this requirement. Id. § 220(3)(e).
> Additionally, the New York Court of Appeals has held that workers
> may bring common law breach of contract suits as the intended
> third-party beneficiaries of such public works contracts. See Fata v.
> S.A. Healy Co., 289 N.Y. 401, 404–07, 46 N.E.2d 339 (1943).
>
> The plaintiffs here pursued the latter course. To prevail in their suit,
> they need to show, first, that they are "laborers, workmen, or
> mechanics" within the meaning of NYLL section 220 . . . . See Erie
> County Indus. Dev. Agency v. Roberts, 94 A.D.2d 532, 465 N.Y.S.2d
> 301, 305 (Fourth Dep't 1983), aff'd, 63 N.Y.2d 810, 482 N.Y.S.2d
> 267, 472 N.E.2d 43 (1984). Second, they must show that theirs was
> "covered" work—that is, work entitled to prevailing wages under the
> statute. See id.

Ramos v. SimplexGrinnell LP, 740 F.3d 852, 855–56 (2d Cir. 2014).

Like the plaintiffs in Ramos, Plaintiffs have chosen to pursue their claims as third-party

beneficiaries to state funded contracts instead of through the administrative procedures provided

SPA-10

under NYLL. And, similar to the defendants in Ramos, Defendant does not dispute that Plaintiffs' employment with Defendant places them within the ambit of NYLL. Rather, for the Inspection Contracts, Defendant argues on three grounds that Plaintiffs are not entitled to prevailing wages as third-party beneficiaries to those agreements. The Court addresses each ground in turn.

### a.  Plaintiffs' Claims are Time-Barred

First, Defendant argues that Plaintiffs' breach of contract claims are time-barred for the Inspection Contracts. Def.'s Mem. at 6–8. The Court agrees.

"A third-party beneficiary does not have greater rights than the promisee under the agreement sued upon." Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1234 (S.D.N.Y. 1994), aff'd, 43 F.3d 1458 (2d Cir. 1994). Here, the Inspection Contracts bar public entities who contracted with Defendant from bringing claims against Defendant "more than one year after accrual of the cause of action." Rizzo Decl. ¶ 14 (citing Inspection Contracts). Thus, because the promisees under the Inspection Contracts—public entities—cannot bring suit on claims that accrued more than a year ago, neither can Plaintiffs as third-party beneficiaries under those agreements. See Barnum, 850 F. Supp. at 1234–35 ("Since the promisee . . . can no longer enforce the covenant to repay the terminated residents under the Agreement's internal 15 months statute of limitations, the third-party beneficiary . . . is also time barred under the Agreement's internal limitations period."); Sidik v. Royal Sovereign Int'l Inc., 348 F. Supp. 3d 206, 214 (E.D.N.Y. 2018) (concluding that third-party beneficiaries to a contract for security and monitoring services are subject to contract's one-year limitations period).

10

SPA-11

Plaintiffs respond that the one-year limitations period included in the Inspection Contracts are "void as against public policy" since "Plaintiffs and the proposed class were unaware" of that provision. Pls.' Resp. at 6. Yet, there is no indication that the third-party beneficiaries in Barnum or Sidik were aware of the provisions in the contracts at issue in those cases, either. And Plaintiffs do not cite to case law holding that a one-year limitations period in a contract is void as against public policy under New York law. The Court does not believe Plaintiff could have done so, anyway. See Sidik, 348 F. Supp. 3d at 214.

Plaintiffs' claims under the Inspection Contracts accrued at the latest in 2014 and 2015 (when Walton and Maddison terminated their employments with Defendant, respectively). See Rizzo Decl. ¶¶ 9, 11. Plaintiffs, however, commenced this action in 2017, i.e., two to three years after the claims accrued. Dkt. No. 1. Accordingly, their third-party beneficiary claims based on the Inspection Contracts are time-barred.

### b.  The Inspection Contracts Do Not Entitle Plaintiffs to Prevailing Wages

#### (1)  Breach of Contract

Second, Defendant alternatively argues that Plaintiffs' breach of contract claims stemming from the Inspection Contracts must fail because those agreements do not provide Plaintiffs and similarly-situated employees prevailing wages for their work. Def.'s Mem. at 9–10. The Court agrees.

As noted by the Ramos court:

> New York courts have held that, in order for workers to bring a third-party breach of contract claim under NYLL section 220, the contract between the employer and the municipality must expressly state that a prevailing wage will be paid. See, e.g., [Fata v. S. A. Healy Co., 46 N.E.2d 339 (1943)] (holding that the contractual

11

obligation to pay the prevailing wages provided by the statute provides workers with the third-party enforcement rights); <u>Maldonado v. Olympia Mech. Piping & Heating Corp.</u>, 8 A.D.3d 348, 777 N.Y.S.2d 730, 731 (2d Dep't 2004) (a third party claim can be brought when the "contract between the employer and the municipality expressly provides for the [prevailing] wages to be paid"); <u>see also</u> <u>Seidel v. Hoffman Floor Covering Corp.</u>, No. 09–cv–4027(js)(wdw), 2012 WL 3064153 (E.D.N.Y. July 26, 2012) ("New York courts have indicated that a breach of contract claim depends on the actual insertion of Section 220's prevailing wage language into the contract.").

<u>Ramos</u>, 740 F.3d at 858.

Simply put, the Inspection Contracts do not affirmatively "state that the [Defendant] will pay prevailing wages." Rizzo Decl. ¶¶ 16–17 (citing Inspection Contracts). Because Plaintiffs are not owed prevailing wages under the Inspection Contracts, their third-party beneficiary claims brought to enforce those contracts mus fail.

Nevertheless, Plaintiffs argue that "if [NYLL] § 220 requires that public work be paid prevailing wages, the contractor may not avoid liability based on the presence or absence of contract language." Pls.' Resp. at 5. However, Plaintiffs' reliance on <u>Cox v. NAP Constr. Co.</u>, 10 N.Y.3d 592, in support of their argument is misplaced. Even if NYLL § 220 requires employers to pay prevailing wages to employees working at public entities, neither <u>Cox</u> nor any other case holds that those employees are still entitled to prevailing wages when they sue to enforce contracts that do not provide for such wages. <u>See</u> <u>Seidel</u>, 2012 WL 3064153, at *3 ("In <u>Cox</u>, as in <u>Fata</u>, there was no question that the defendants had entered into public works contracts that contained the prevailing wage provision in issue, and neither case addressed what happens where a plaintiff cannot prove that a promise to pay prevailing wages was actually made. As mentioned

12

already, <u>Fata</u> suggested that a laborer in this situation is limited to his statutory remedies [under NYLL]." (internal citation omitted)).

Plaintiffs also argue that provisions in the Inspection Contracts absolving Defendant of the obligation to pay prevailing wages are void as against public policy. Pls.' Resp. at 6–7. The Court is not persuaded by Plaintiffs reliance upon <u>Wroble v. Shaw Envtl. & Infrastructure Eng'g of New York, P.C.</u>, 88 N.Y.S.3d 21, 23 (App. Div. 2018) and <u>Singh v. Zoria Hous., LLC</u>, 83 N.Y.S.3d 488, 490 (App. Div. 2018) in support of their argument. <u>Wroble</u> hold that a contract cannot "prohibit[] third-party actions for violation of prevailing wage payments" when the contract provides prevailing wages, <u>Wroble</u>, 88 N.Y.S.3d at 22–23, while <u>Singh</u> holds that a contract cannot compel a third-party beneficiary to exhaust administrative remedies before enforcing a separate provision in the contract that provides prevailing wages, <u>Singh</u>, 83 N.Y.S.3d at 490. Neither case holds that contracts forbidding payments of prevailing wages are void as against public policy. That New York courts *require* contracts to expressly provide for prevailing wages for third-party beneficiaries to seek such wages under those agreements suggests the provisions in the Inspection Contracts prohibiting the payment of prevailing wages do not violate public policy. <u>See</u> <u>Ramos</u>, 740 F.3d at 858.

In sum, the Court grants summary judgment for Defendant on Plaintiffs' breach of contract claims stemming from the Inspection Contracts since those agreements do not entitle Plaintiffs to prevailing wages.

*(2) FLSA*

Defendant argues that Plaintiffs are not owed prevailing wages under the FLSA "on

13

contracts that do not provide for the payment of prevailing wages." Defs.' Mem. at 10–11. The Court agrees.

Defendant relies on Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007) in support of its argument. Sobczak observed that plaintiffs attempting to recover unpaid overtime at 1.5 times the prevailing wage rate under the FLSA "must first prove their entitlement to prevailing wages under state law as predicate for an FLSA recovery." 540 F. Supp. 2d at 361. This is because NYLL, and not the FLSA, provides for prevailing wages. Compare FLSA § 207(a)(1) (providing overtime compensation "at a rate not less than one and one-half times the *regular rate* at which [the employee] is employed") with NYLL § 220(3)(a) (mandating individuals who work at public institutions receive *prevailing wages*) (emphasis added). In Sobczak, the court found the plaintiff's had proven their entitlement to prevailing wages under New York law because the contracts at issue provided for prevailing wages. Id. at 357–61. Plaintiffs, as discussed above, are not owed prevailing wages in the Inspection Contracts. Hence, the question remains whether Plaintiffs may still recover unpaid overtime at 1.5 times the prevailing wage rate under the FLSA when the Inspection Contracts do not provide prevailing wages. With no guidance from the case law, the Court answers this question in the negative.

Since in this situation "the determination of the 'regular rate' for purposes of calculating overtime [under the FLSA] is a function of contractual arrangements," see Dong v. Ng, No. 08-CV-917, 2011 WL 2150544, at *6 (S.D.N.Y. Mar. 8, 2011), report and recommendation adopted by No. 08-CV-917, 2011 WL 2150545 (S.D.N.Y. May 31, 2011), Plaintiffs' FLSA claims rise and fall with the language included in the contracts under which they worked. Consequently, since the Inspection Contracts do not provide for prevailing wages, Plaintiffs cannot collect

14

unpaid overtime under the FLSA that is calculated off of the prevailing wage rate. To hold

otherwise would allow Plaintiffs to make an end-run around the state restrictions on Plaintiffs'

ability to seek prevailing wages as third-party beneficiaries discussed above.

In sum, the Court grants summary judgment for Defendant on Plaintiffs' FLSA claims

stemming from the Inspection Contracts because, once again, those agreements do not entitle

Plaintiffs to prevailing wages.

### c. NYLL Does Not Entitle Plaintiffs to Prevailing Wages for Testing and Inspection Work

Plaintiffs seek prevailing wages for "installing, maintaining, inspecting, testing, repairing

and/or replacing fire alarm, fire sprinkler, and security system equipment." Third Am. Compl.

¶¶ 2, 16, 34. Defendant argues Plaintiffs cannot recover prevailing wages for "inspection" and

"testing" work under NYLL. Def.'s Mem. at 11–12. The Court agrees with Defendant.

NYLL limits recovery of prevailing wages to "construction, replacement, maintenance,

and repair of public works." Erie Cty. Indus. Dev. Agency v. Roberts, 65 N.Y.S.2d 301, 305

(App. Div. 1983), aff'd, 472 N.E.2d 43 (N.Y. 1984). Plaintiffs rely on Ramos for the proposition

that they are entitled to prevailing wages under NYLL for inspection and testing work. Pls.'

Resp. at 7 (citing 740 F.3d at 854). Ramos in turn relies on a 2010 opinion from the New York

State Department of Labor ("NYSDOL"), which held that testing and inspection work are types

of "maintenance" covered by NYLL for the purposes of prevailing wages. 740 F.3d at 854. Yet

the NYSDOL based its opinion on the fact that the defendant's "own documents had treated

testing and inspection work as within the category of 'maintenance work'" covered by NYLL. Id.

Here, the Inspection Contracts state "test & inspection [service] provided under this Agreement

15

does *not* include any maintenance . . . ." Rizzo Decl. Decl. ¶¶ 15–16 (emphasis added) (quoting Inspection Contracts). Thus, Ramos is not applicable on this set of facts. Plaintiffs further rely on a New York Court of Appeals decision that answered two questions certified by the Ramos court. Pls. Resp. at 7 (citing Ramos v. SimplexGrinnell LP, 21 N.E.3d 237 (N.Y. 2014)). That opinion, however, takes no view on whether inspection and testing work is covered by NYLL. Ramos, 21 N.E.3d 237.

As noted above, a third-party beneficiary does not possess rights greater than those afforded to the promisee under the contract. Barnum, 850 F. Supp. at 1234. Consequently, Plaintiffs are bound by the terms of the Inspection Contracts, which do not afford prevailing wages (let alone those for inspection and testing work). See Timberline Elec. Supply Corp. v. Ins. Co. of N. Am., 421 N.Y.S.2d 987 (App. Div. 1979), aff'd, 417 N.E.2d 1248 (N.Y. 1980) ("Any right Timberline has under the suretyship agreement arises because of Timberline's status as a third-party beneficiary. As such Timberline is bound by the conditions and limitations created by the contract.") (internal citation omitted).

In sum, even if the Court found that Defendant owed Plaintiffs prevailing wages under the Inspection Contracts (which, as discussed above, the Court has not done), Defendant would not owe prevailing wages for inspection and testing work.

### 2. *Quantum Meruit and Unjust Enrichment*

Under a theory of quantum meruit, Plaintiffs claim they are entitled to the "reasonable value" of the "numerous and valuable services" they performed at Defendant's request. Third Am. Compl. ¶¶ 67–69. Plaintiffs also claim Defendant owes them the difference between the amount public entities paid to Defendant, which was based on the prevailing wage rate, and the

16

SPA-17

amount Defendant actually paid to its employees for their work performed at those entities, which was based on a lower rate. Id. ¶¶ 70–74. Defendant argues that Plaintiffs cannot maintain their quantum meruit and unjust enrichment claims because they are "premised entirely on Plaintiffs' alleged contractual . . . entitlement to prevailing wages." Def.'s Mem. at 12–14. The Court agrees with Defendant.

Plaintiffs' quantum meruit and unjust enrichment claims stem from their purportedly contractually-based entitlement to prevailing wages. See Third Am. Compl. ¶¶ 29–36; 72. "It is well-settled that when a valid and enforceable written contract governs a given subject matter, recovery in quasi-contract is precluded." Jara v. Strong Steel Door, Inc., 872 N.Y.S.2d 691, 691 (N.Y. Sup. Ct. 2008) (citing, inter alia, Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987)). Since the Inspection Contracts between Defendant and public entities contain provisions governing whether Plaintiffs are entitled to prevailing wages, Plaintiffs' "quasi-contract claims, . . . quantum meruit and . . . unjust enrichment, must be dismissed." See id.

Plaintiffs' sole reliance on Johnson v. Carlo Lizza & Sons Paving, Inc., 160 F. Supp. 3d 605 (S.D.N.Y. 2016) in support of their claims is misguided. In Johnson, the court denied a motion to dismiss the plaintiffs' quantum meruit and unjust enrichment claims because the plaintiffs' could plead those claims in the alternative to breach of contract. Id. at 617. Here, Defendant has moved for summary judgment. "Of course, at summary judgment, if the parties agree that there was a valid contract on the same subject, pleading in the alternative under Rule 8(d) cannot save a claim of unjust enrichment." Okada v. Whitehead, No. 15-CV-1449, 2016 WL 9448482, at *14 (C.D. Cal. Nov. 4, 2016) ("At the complaint stage, pleading in the alternative is

17

acceptable, but in response to a motion for summary judgment plaintiff must in the face of defendant's evidence provide some response . . . ."), aff'd, 759 F. App'x 603 (9th Cir. 2019); see also Bolla v. Strickland, No. 07-CV-129, 2008 WL 11506700, at *2 (W.D. Pa. May 14, 2008), report and recommendation adopted by No. 07-CV-129, 2008 WL 11506698 (W.D. Pa. May 28, 2008), aff'd, 304 F. App'x 22 (3d Cir. 2008).

In sum, the Court grants summary judgment to Defendant on Plaintiffs' quantum meruit and unjust enrichment claims.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Conditional Certification (Dkt. No 87) is **DENIED without prejudice**; and it is further

**ORDERED**, that Defendant's Motion for Partial Summary Judgment (Dkt. No 87) is **GRANTED**;[4] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

---

[4] The Court recognizes that the Inspection Contracts do not reflect the complete universe of contracts relevant to Plaintiffs' claims. Defendant does, too. See Def.'s Reply at 4 n.2 ("Plaintiffs cite to two contracts which state the work in the contracts will be paid at prevailing wage rates . . . . [Defendant] only moved on the contracts that did not contain prevailing wage provisions.") (internal citations omitted). As discussed above, the Court limits its dismissal of Plaintiffs' breach of contract, FLSA, quantum meruit, and unjust enrichment claims to those based on the contracts Defendant submitted with its Motion for Partial Summary Judgment, i.e., the Inspection Contracts. At this time, the Court takes no position on whether Plaintiffs may pursue these claims arising out of other contracts that may be relevant to Plaintiffs' claims in this case.

18

SPA-19

DATED:     February 27, 2020
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

SPA-20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KEVIN T. MADDISON and DAVID WALTON,
individually and on behalf of
all other persons similarly situated,

                                        Plaintiffs,

                                                          Case No 17 CV 359 (LEK)(ATB)

            -against-


COMFORT SYSTEMS USA (SYRACUSE), INC,
d/b/a ABJ FIRE PROTECTION CO., INC.

                                        Defendant.
--------------------------------------------------------------------X

## <u>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION  SETTLEMENT</u>

This Court, having held a Final Approval Hearing on November 2, 2023, having

provided notice of that hearing in accordance with the Preliminary Approval Order, and having

considered all matters submitted to it in connection with the Final Approval Hearing and

otherwise, and finding no just reason for delay in entry of this Order Granting Final Approval

of Class Action Settlement (the "Final Approval Order" or this "Order") and good cause

appearing therefore,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Unless otherwise defined, all capitalized terms in this Final Approval Order

shall have the same meaning as they do in the Settlement Agreement, Dkt. No. 169-2.

2.      The Court finds that the Settlement Agreement was negotiated in good faith

and at arm's length by experienced counsel who were fully informed of the facts and

circumstances of the Action and of the strengths and weaknesses of their respective positions.

SPA-21

Further, settlement occurred only after extensive discovery and motion practice.   Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

      3.     The Court makes the following findings and conclusions regarding notice of the settlement to the Settlement Class Members:

      a.     The Settlement Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement and the Settlement Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;

      b.     The Settlement Class Notice:(i) constituted the best practicable notice under the circumstances to potential Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, 29 U.S.C. § 216, the United States Constitution, the Rules of this Court, and any other applicable law.

      c.     The Court finds that the notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, have been met in connection with the proposed Settlement.

      4.     The Court finally approves the Settlement Agreement as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216. The Court finds that Named Plaintiffs and Class Counsel have adequately represented the class; the settlement

SPA-22

was negotiated at arm's length; the relief provided to the class is adequate taking into

account the factors set for at Fed. R. Civ. P. 23(e); and the settlement treats Settlement

Class Members equitably relative to each other. The terms and provisions of the Settlement

Agreement, including all exhibits thereto, have been entered into in good faith and are

hereby fully and finally approved as fair, reasonable, and adequate in all respects,

including as to, and in the best interests of, each of the Parties and the Settlement Class

Members.

5.      The Court approves the plan of distribution for the Settlement Amount as set

forth in the Settlement Agreement, including the payment of up to $8,000 to the Settlement

Administrator.   The Settlement Administrator is ordered to comply with the terms of the

Settlement Agreement with respect to distribution of the settlement funds.

6.      Class Counsel have moved for an award of attorneys' fees and reimbursement

of expenses. In reference to such motion, this Court makes the following findings of fact and

conclusions of law:

a.      that the Settlement confers substantial benefits on the Settlement Class

Members;

b.      that the value conferred on the Settlement Class is immediate and

readily quantifiable;

c.      that Settlement Class Members will receive cash payments that

represent a significant portion of the damages that would be available to them were they to

prevail in an individual action under the New York Labor Law for the Settlement Class

Members' travel time claims;

d.      that Class Counsel vigorously and effectively pursued the

SPA-23

Settlement Class Members' claims before this Court in this complex case;

        e.     that the Settlement was obtained as a direct result of Class Counsel's advocacy;

        f.     that the Settlement was reached following extensive negotiation between Class Counsel and Defendant's Counsel, and was negotiated in good faith and in the absence of collusion;

        g.     that counsel who recover a common benefit for persons other than himself or his client is entitled to a reasonable attorneys' fee from the Settlement Fund as a whole. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984).

11.     Accordingly, Class Counsel are hereby awarded $3,180.98 in expenses Class Counsel expended, and $16,369.51 for attorneys' fees from the Settlement Amount, which this Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement.

12.     The two Named Plaintiffs are hereby compensated in the amount of $2,500 each for their efforts in this case.

13.     The terms of the Settlement Agreement and of this Final Approval Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by Named Plaintiffs and all other Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

14.     The Releases, which are set forth in Paragraph 2 of the Settlement Agreement, are fair, reasonable, and enforceable under the New York Labor Law, Fair Labor Standards

Act, and all other applicable laws, and are expressly incorporated herein in all respects. Upon the Final Approval Date, the Participating Settlement Class Members and Named Plaintiffs, by operation of the Final Judgment, have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Parties from the Released Claims. Settlement Class Members are accordingly forever barred and enjoined from prosecuting against Released Parties any of the Released Claims, with the exception of the reserved claims as set forth in paragraph 2.c of the Settlement Agreement.

16.    This Order and the Final Judgment to be entered pursuant to this Order shall be effective upon entry.   In the event that this Order and/or the Final Judgment to be entered pursuant to this Order are reversed or vacated pursuant to a direct appeal in the Action or the Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

17.    The Court approves the Settlement Agreement and Releases, and expressly integrates and embodies them into this Order. This Court shall retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement and the Releases contained therein, including jurisdiction to enter such further orders as may be necessary or appropriate to administer and implement the terms and provisions of the Settlement Agreement.

18.    The Court certifies for settlement purposes the following class:

> All individuals who worked for Comfort Systems USA (Syracuse), Inc. d/b/a ABJ Fire Protection Co., Inc. from March 30, 2011 through May 30, 2015 performing electrical or sprinkler work such as installing, maintaining, inspecting, testing, repairing and/or replacing fire alarm, fire sprinkler and security system equipment.

SPA-25

19.     The Court acknowledges that the Parties entered into the Settlement

Agreement solely for the purpose of compromising and settling disputed claims, and

Defendant does not admit any violation of law and does not admit any liability to the

Named Plaintiffs or the Settlement Class Members, individually or collectively.

Neither the Settlement Agreement nor any other papers submitted to this Court in

connection with the Settlement shall be deemed an admission of any kind by any of

the Parties or used as evidence against any of the Parties for any purpose, except that

the Settlement Agreement may be introduced in any proceeding for the sole purpose

of enforcing its terms.


IT IS SO ORDERED.

DATED:        November 3, 2023
              Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge